<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DALMACIO TOLENTINO, | | Civil Action No. 13-4168 (WJM) |
| Petitioner, | | |
| v. | | **OPINION** |
| UNITED STATES OF AMERICA, | | |
| Respondent. | | |

**APPEARANCES**:

> DALMACIO TOLENTINO, #29576-050
> CI Moshannon Valley
> 555 Geo Drive
> Philipsburg, PA 16866
> Movant *Pro Se*

> MICHAEL H. ROBERTSON, Assistant U.S. Attorney
> PAUL J. FISHMAN, United States Attorney
> 970 Broad Street
> Newark, NJ 07101
> Attorneys for United States

<u>**MARTINI, District Judge**</u>:

Dalmacio Tolentino, a federal prisoner, filed a Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a 38-month sentence imposed on September 13, 2011, in *United States v. Tolentino*, Crim. No. 09-0484 (WJM) judgment (D.N.J. Sept. 14, 2011), *aff'd*, 486 F.App'x 286 (3d Cir. 2012), after a jury found him guilty of four drug trafficking counts. (ECF No. 1.) The United States filed an Answer, and Tolentino filed a Reply. (ECF Nos. 6, 7.) For the reasons expressed below, the Court will deny the § 2255 motion and deny a certificate of appealability.

# I. BACKGROUND

On October 10, 2008, the United States filed a criminal complaint charging Tolentino with knowingly conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine. Tolentino was indicted in 2009, and on January 4, 2011, after this Court granted Tolentino's motion to withdraw his guilty plea, a grand jury returned a superseding indictment. On January 21, 2011, a jury found him guilty of conspiracy to import five kilograms or more of cocaine, conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, aiding and abetting the importation of cocaine, and attempting to distribute and possess with intent to distribute cocaine. This Court denied Tolentino's motion to vacate the verdict and to grant a new trial and, alternatively, to vacate the verdict and enter a judgment of acquittal. On September 13, 2011, this Court sentenced Tolentino to a 38-month term of imprisonment and five years of supervised release. Tolentino appealed, arguing that this Court's failure to *sua sponte* raise an outrageous government conduct defense violated the Due Process Clause. On July 5, 2012, the Third Circuit affirmed. *See United States v. Tolentino,* 486 F.App'x 286 (3d Cir. 2012).

On June 28, 2013, Tolentino signed, and presumably handed to prison officials for mailing to the Clerk, the motion to vacate under 28 U.S.C. § 2255. In his § 2255 motion, Tolentino raises two grounds: (1) counsel was ineffective for "failing to interview and call [a] witness who would have provided testimony corroborating Tolentino's defense theory of entrapment, in violation of Tolentino's Sixth Amendment right to effective legal representation," and (2) counsel was ineffective "for failing to strike jurors who displayed [a] predisposition towards judging Tolentono's Sixth Amendment right to effective legal representation." (ECF No. 1-1 at 2, 7.) As factual support for ground one, Tolentino asserts that counsel was

constitutionally deficient in failing to call a barber who worked with Tolentino at his barbershop where this barber was willing to testify that he was an acquaintance of the government's confidential informant, who was the primary witness for the prosecution, and that "Tolentino repeatedly displayed reluctance and disinterest in participating in the CI's requests to engage in illicit drug activity." (ECF No. 1-1 at 4.) Tolentino further asserts that there was a reasonable probability that he would have been acquitted if the jury had heard the testimony of this witness.

As factual support for ground two, Tolentino asserts that counsel was ineffective for failing to strike juror number 152, who stated that her grandmother was robbed and her apartment was broken into, and failing to strike juror 129, who stated that she worked as a mental health counselor and some of her clients were addicted to drugs. Tolentino contends that a thorough inquiry was not conducted regarding the impartiality of these jurors, even though juror number 152 responded negatively to this Court's question as to whether her experience would affect her ability to be fair and impartial, and juror number 129 responded "I don't think so," to the Court's question as to whether her interaction with addicts would cause her to be favorable toward one party or the other in the case. According to Tolentino, counsel was deficient because "the responses given by jurors number 129 and 152 as to whether they could be fair and impartial were marked by ambiguity, and these jurors should have been excused by the defense on that basis alone." (ECF No. 1-1 at 8.)

On July 22, 2013, this Court notified Tolentino, pursuant to *United States v. Miller,* 197 F.3d 644 (3d Cir. 1999), that he could elect to have his § 2255 motion ruled upon as filed, or withdraw the § 2255 motion and file an all-inclusive § 2255 motion. (ECF No. 2.) In response, Tolentino asked the Court to proceed with the § 2255 motion as filed. (ECF No. 4.) On August 20, 2013, the Court ordered the Clerk to serve the § 2255 motion, ordered the United States to file

an answer, and permitted Tolentino to file a reply to the answer.   (ECF No. 5.)   On August 26, 2013, the government filed an Answer, arguing that the Court should deny the motion because Tolentino has not shown that counsel was deficient and that he was prejudiced.   (ECF No. 6.)   On September 16, 2013, Tolentino filed a Reply stating that the witness referred to in ground one is Santiago Felix Valdez.   (ECF No. 7.)   He claimed that

> counsel himself interviewed Mr. Valdez prior to the commencement of Tolentino's trial to assess Mr. Valdez's relationship with Tolentino and whether Mr. Valdez's testimony would aid Tolentino's case.   Mr. Valdez communicated to counsel that he worked as a barber and that he was present when the government's CI attempted to induce Tolentino into committing the crime that he was ultimately charged with. In fact, Mr. Valdez explained to counsel that although he introduced Tolentino to the CI, he did not introduce Tolentino as a drug dealer. This statement would have contradicted the CI's statement that Tolentino was introduced to him as a drug dealer.   Moreover, Mr. Valdez also communicated to counsel that the CI repeatedly attempted to persuade him to engage in drug activity as he did with Tolentino, and that the CI also attempted to persuade his girlfriend to engage in illicit drug activity when efforts to persuade him (Mr. Valdez) proved futile.

(ECF No. 7 at 2-3.)   Tolentino contends that counsel should "be questioned about why Mr. Valdez was not called to testify."   (ECF No. 7 at 3.)

## II.   DISCUSSION

Under 28 U.S.C. § 2255, a federal court may vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255(a).   An evidentiary hearing is not required under § 2255 where "the files and records of the case conclusively show that the prisoner is entitled to no relief."   *United States v. Padilla-Castro,* 426 F.App'x 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)); *accord United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

A.      Ineffective Assistance of Counsel

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  *Id.* at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id*. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]"  *Hinton v. Alabama,* 134 S.Ct. 1081, 1083 (2014) (*per curiam*).  To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  *Strickland* at 693. [1]  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission."  *Hinton,* 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 1089 (quoting *Strickland,* 466 U.S. at 695).

---

[1] The reasonable probability standard is less demanding than the preponderance of the evidence standard.  *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

5

Tolentino contends in ground one that counsel's failure to call Santiago Felix Valdez, a fellow barber at Tolentino's barbershop, constituted ineffective assistance of counsel.   This Court rejects this claim because Tolentino has not sufficiently asserted prejudice.   "This requires more than just a 'conceivable' likelihood of a different result."   *Grant v. Lockett,* 709 F.3d 224, 235 (3d Cir. 2013) (quoting *Harrington v. Richter,* ___ U.S. ___, 131 S.Ct. 770, 792 (2011)); *see also Duncan v. Morton,* 256 F.3d 189201-202 (3d Cir. 2001) (observing that a showing of prejudice "may not be based on mere speculation about what the witness[] [his attorney] failed to locate might have said[.]") (quoting *United States v. Gray,* 878 F.2d 702, 712 (3d Cir. 1989)).[2]   Here, Tolentino's failure to include a sworn statement regarding the nature of Valdez's proposed testimony is fatal to his making a *prima facie* showing of prejudice.   *See Duncan,* 256 F.3d at 202 ("In light of Duncan's failure to present any sworn testimony by [the potential witness], he has failed to establish prejudice as a result of [counsel's] alleged failure to interview [the witness]."); *United States v. Dawson,* 857 F.2d 923, 928-29 (3d Cir. 1988) (holding in § 2255 case that the district court properly dismissed ineffective assistance of counsel claim where, *inter alia,* Dawson did not submit an affidavit stating what a proposed witness would have testified); *Karamanos v. United States,* Civ. No. 04-0171 (JEI), 2005 WL 2777552 *4 (D.N.J. Oct. 24, 2005) (rejecting ineffective assistance of counsel claim without an evidentiary hearing in § 2255 case based on counsel's failure to call witnesses because "the Court cannot conclude that Petitioner was

---

[2] The *Gray* court relied on *United States v. Velenzuela-Bernal,* 458 U.S. 858, 866-67 (1982), wherein the Supreme Court rejected the proposition that the deportation of a potential witness, whose testimony could conceivably benefit the defendant, before defense counsel had an opportunity to interview him, did not violate the Due Process Clause or the Compulsory Process Clause:   "Given the vagaries of a typical jury trial, it would be a bold statement indeed to say that the testimony of any missing witness could not have 'conceivably benefited' the defense.   To us, the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel."

6

prejudiced by counsel's failure to investigate or call these individuals as witnesses because Petitioner has failed to provide a sworn statement of facts from any of the [witnesses] detailing their proposed testimony.")

Moreover, in determining prejudice, "the effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial:  'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'"  *Grant,* 709 F.3d at 235 (quoting *Strickland,* 466 U.S. at 696); *see also United States v. Agurs,* 427 U.S. 97, 113 (1976) ("[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt").  As the Third Circuit noted in this case, "Tolentino's conviction was based largely on the testimony of, and recordings made by Arcila, the government's confidential informant.  During one of the recorded conversations . . , Tolentino can be heard discussing potential prices and buyers for drugs."  *Tolentino,* 486 F.App'x at 287.  Arcila testified that Tolentino introduced him to a person involved in the drug trafficking business (Willy), who was able to purchase the drugs and arrange for their transport to the United States through Newark airport.  Tolentino's defense was entrapment, which the jury squarely rejected.[3]  As this Court found, and the Third Circuit noted in affirming Tolentino's conviction, even assuming repeated contacts by Arcila over the course of more than a year, Tolentino "point[ed] to no evidence showing that [Arcila] did anything

---

[3]  "[A] valid entrapment defense has two related elements:  government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. Predisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetuate the crime."  *Mathews v. United States,* 485 U.S. 58, 63 (1988) (citations and internal quotation marks omitted).  Where entrapment is the defense, the defendant has the burden of producing evidence of both inducement and non-predisposition to commit the crime and, after the defendant has made this showing, the government has the burden of proving that it did not entrap the defendant.  *United States v. Wright,* 921 F.2d 42, 44 (3d Cir. 1990).

more than provide [him] with an opportunity to commit a crime." *Id.* at 289.  The Third Circuit found that, "[u]nfortunately for Tolentino, his introduction of the confidential informant to 'Willy,' someone the District Court found to be 'clearly . . . involved in . . . the illegal business of importing drugs,' established both that he used his own knowledge to further the drug trafficking conspiracy and suggests that he had a predisposition to commit the crime." *Id.* (citation omitted). Even if Tolentino had submitted an affidavit from Valdez, Valdez's proposed testimony, as described by Tolentino, would not have shown that the government induced Tolentino to commit the crimes, as Valdez himself resisted such "inducement," or suggested a lack of predisposition.

Careful consideration of the totality of the evidence at trial and the nature of Tolentino's defense – entrapment - requires this Court to conclude that Tolentino has not shown that, had trial counsel called Valdez, it is "reasonably probable that . . . the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  Because Tolentino has not made a prima facie showing of prejudice, this Court will dismiss ground one of his § 2255 motion claiming that counsel was ineffective in failing to call Valdez as a witness.[4]

---

[4] This Court is aware of the Third Circuit's recent holding in *Branch v. Sweeney,* ___ F.3d ___, 2014 WL 3293716 (3d Cir. July 9, 2014), a § 2254 case wherein the court reversed the dismissal of Branch's claim without an evidentiary hearing, alleging that counsel was ineffective in failing to call two potential witnesses who submitted sworn statements to the PCR court corroborating Branch's version of the events leading to the lethal shooting and discredited the State's witnesses who contradicted Branch's testimony.  Unlike this case, where Valdez's testimony would have potentially been harmful to Tolentino, as Valdez was able to resist the informant's attempts to persuade him to commit a drug crime, the testimony of the potential witnesses in *Branch* was clearly exculpatory and, "rather than addressing matters that were peripheral or that other testimony covered adequately and conclusively, Samee's and Robinson's written statements addressed matters that were both sharply disputed and critical." *Id.* at *8.  *Branch* is also distinguishable because, unlike the evidence presented in Tolentino's case, which was strong and included recordings of Tolentino, the State's case in *Branch*, "even in the absence of their unheard evidence, was far from airtight," given that the State's prime witness was potentially the shooter, and "the physical evidence was inconclusive and even might have favored Branch." *Id.* at *11, *12.

In ground two, Tolentino asserts that counsel was ineffective for failing to strike jurors 129 and 152, who "referred to circumstances in their past that personally exposed them to crime and the criminal justice system." (ECF No. 1-1 at 7.) Although this Court asked each of these jurors during voir dire whether his or her experience in having a grandmother who had been robbed and in having counseled persons addicted to drugs would affect the juror's ability to be fair and impartial, and these jurors answered that they did not think so, Tolentino contends that "the responses given by jurors number 129 and 152 as to whether they could be fair and impartial were marked by ambiguity, and these jurors should have been excused by the defense on that basis alone." (ECF No. 1-1 at 8.) The government correctly contends that Tolentino has not presented any factual basis for his claim that these jurors could not be fair and impartial. Accordingly, counsel could not have been constitutionally deficient in failing to strike the jurors, and Tolentino is not entitled to relief under § 2255 on ground two. *See Ross v. District Attorney of the County of Allegheny,* 672 F.3d 198, 211 n.9 (3d Cir. 2012) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (quoting *Werts v. Vaughn,* 228 F.3d 178, 202 (3d Cir. 2000)).

B. Certificate of Appealability

No certificate of appealability will issue because Tolentino has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(1)(B).

### III.   CONCLUSION

This Court dismisses the § 2255 motion and denies a certificate of appealability.

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: July 31, 2014

9